IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| STEPHEN BITTNERS, et al., | } | |
| | } | |
| Plaintiff, | } | |
| | } | Civil Action No.: |
| vs. | } | 3:17-cv-143-MPM-JMV |
| | } | |
| BROWNING ARMS COMPANY, | } | |
| | } | |
| Defendant. | } | |

**FINAL JUDGMENT AND ORDER GRANTING MOTION FOR FINAL**
**APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

This matter arises on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class [Dkt. 63]. Having considered the Settlement Agreement, Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, and all other evidence submitted, the Court finds as follows.

FACTS AND PROCEDURAL HISTORY

Defendant's current firearm catalog lists over 25 firearms which come coated with Dura-Touch. Defendant has sold firearms coated with Dura-Touch for at least 10 years. Plaintiff contends that, after a short time in use, the Dura-Touch coating on the stock of the guns sold with it become extremely sticky such that it interferes with the use of the firearm for its intended purpose, and Plaintiff further contends that, despite Browning's knowledge of this issue, it continues to manufacture, sell and distribute firearms coated with Dura-Touch without informing its purchasers that the Dura-Touch Coating will degrade after a short time in use.

Former plaintiff James Wilbourn filed the original Class Action Complaint on August 8, 2017, and that Class Action Complaint brought claims for negligence and/or wantonness, breach

1

of implied warranties, fraudulent and negligent misrepresentation, fraudulent omission/concealment, unjust enrichment, and for declaratory relief under 28 U.S.C. § 2201. On October 4, 2017, former Plaintiff Wilbourn was substituted out of the case and Stephen Bittner was substituted in as lead Plaintiff for the Class. Plaintiff Bittner maintained the claims for negligence and/or wantonness, breach of implied warranties, fraudulent and negligent misrepresentation, fraudulent omission/concealment, unjust enrichment, and for declaratory relief under 28 U.S.C. § 2201.

After beginning discovery into issues relevant to Class Certification, the parties began negotiating the settlement prompting the instant Motion. Over the span of over four to six months, the parties negotiated every facet on Settlement Agreement which the Plaintiff now asks this Court to Approve.

On December 20, 2018, the parties attended a hearing for preliminary approval of the proposed settlement and class certification. That same day, this Court entered an order [Dkt. 52] granting preliminary approval (the "Preliminary Approval Order") of the settlement between the parties. Further, this Court approved the class notice plan submitted by the parties.

Due to the nature of the firearm industry, neither party had an exhaustive list of the putative Class Members, so the parties executed a three-prong method for reaching said Class Members:

> (1) On January 23, 2019, Defendant launched two dedicated customer service webpages with information related to the preliminarily approved settlement[1]. These webpages contained not only the long-form notices of the settlement, but also allowed Class Members to begin filing claims;
>
> (2) Defendant sent letters dated January 18, 2019 to 3,061 of its authorized dealers and distributors with information pertaining to the preliminarily approved settlement, and asked their dealers and distributors to circulate the notice information to their employees and customers; and

---

[1] These websites are: https://duratouchsupport.browning.com/ and https://duratouchsupport.winchesterguns.com/.

2

>  (3) Defendant purchased advertising space in three of the most widely circulated hunting/shooting publications in which to provide notice of the preliminarily approved settlement. Defendant's notice appeared in April 2019 issue for two of the publications and in the April/May 2019 issue for the third. These three publications had a circulation of 3,592,217.

During the nearly four month notice period, not a single Class Member objected or opted out of the Settlement.

Thereafter, Plaintiff filed his Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class. On June 13, 2019, this Court held a fairness hearing (the "Fairness Hearing"), for which members of the Settlement Class had been given appropriate notice and were invited, including those with any objections. An opportunity to be heard was given to all persons requesting to be heard in accordance with the Preliminary Approval Order. No persons other than the parties appeared in Court seeking to address the settlement pursuant to the Settlement Agreement. Therefore, the Court grants the Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class for the reasons that follow.

**STANDARD**

Regarding the class-action settlement approval, a district court has discretion to approve such a settlement under Rule 23(e) if the settlement is fair, adequate, and reasonable. *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). In assessing whether the settlement is reasonable, the Fifth Circuit has set forth six key points, or "*Reed* factors," which should be considered. These factors are: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the

opinions of class counsel, class representatives and absent class members." *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

As to the final certification of the class, Federal Rule of Civil Procedure 23 generally applies with full force even when certification is solely for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Of course, in the settlement context the district court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id*. at 620, 117 S. Ct. 2213. However, the court's consideration of the other factors in Rule 23 is of "vital importance," and demands "undiluted, even heightened" attention in the settlement context. *Amchem Prods., Inc.*, 521 U.S. at 620, 117 S. Ct. 2231. The familiar Rule 23 requirements are numerosity, commonality, typicality, and adequacy of representation.

## ANALYSIS

**A.     Class Action Settlement Approval.**

In order to approve the settlement the Court must ensure that all pertinent Rule 23 requirements have been met. Generally, courts use the aforementioned *Reed* factors to ensure that the settlement is fair, adequate and reasonable. Furthermore, the Court must also direct notice in a reasonable manner to all class members who would be bound by the settlement.

**1.     The Reed Factors.**

An analysis of the *Reed* factors establishes that this settlement is fair, reasonable, and adequate. First, there are no allegations involving fraud or collusion in the settlement of this action. A court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. *Ayers*, 358 F.3d at 369; *Liger v. New Orleans Hornets NBA L.P.*, No. 05-1969, 2009 U.S. Dist. LEXIS 85733, at *10 (E.D. La. Aug. 27, 2009); 4 NEWBERG ON

CLASS ACTIONS § 11.51 (4th ed.). Additionally, the Parties have vigorously prosecuted this action, and settled after protracted settlement negotiations.

Second, there is no question that this is complex. Should this case have to proceed to trial, it will necessitate the Plaintiff's use (and expense) of experts to analyze and determine the exact cause of the Dura-Touch coating degradation and discredit any experts from Browning that contend environmental issues or Plaintiff's and Class Members' treatment of the firearms was the cause of the degradation, and Defendant will certainly file motions for summary judgment and other trial motions that will need to be opposed. The parties will also have to proceed with formal merits-based fact discovery and depositions.

Third, this matter has progressed extensively, such that both parties and this Court possess ample information with which to evaluate the merits of the parties' positions. *See Ayers*, *supra*., 358 F.3d at 369. Both of the parties agree that considering the discovery related to class certification and the informal exchange of discovery related to the merits of the action, Class Counsel is more than able to determine the settlement's adequacy in relation to the probability of success on the merits were this litigation to continue. This is especially true because the Plaintiff and Class Members are getting exactly what they want—repair of their firearm—and that remedy is available to the Class Members for as long as they own their firearm. Thus, examination of the state of the proceedings weighs in favor of upholding the settlement.

The fourth *Reed* factor, the probability of success on the merits, is telling in this case. First, Plaintiff may have difficulty certifying the action as a class action if it is opposed by Browning because it will certainly claim that the issues with Plaintiff and Class Members' firearms involve individual issues of law and fact that prevail over any common issues. Second, Plaintiff also runs the risk of not succeeding at trial because Plaintiff will have to establish that any degradation of

the Dura-Touch coating due to an inherent defect in the coating and not from Plaintiff's and Class Members' treatment of the firearm or its exposure to chemicals or other environmental conditions. For certain of its claims, Plaintiff will also have to prove knowledge of the defect prior to manufacturing and selling the subject firearms. Finally, there is also the risk that certain Class Members may have statute of limitations issues with respect to certain claims. In light of this significant risk, the Court finds that the fourth factor weighs in favor of settlement.

The fifth *Reed* factor, Plaintiff's range of possible recovery, weighs heavily in favor of settlement. Whatever the cost to ultimately repair any firearm suffering from a degradation of its Dura-Touch Coating, this Settlement is covering the complete cost of such a repair throughout a time period of unlimited duration.

Finally, the opinions of class counsel, class representatives and absent class members must be considered in the analysis of whether this proposed settlement is fair, reasonable and adequate. In the case at bar, all parties agree that the settlement is fair, adequate, and reasonable. The trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citing *Flinn v. FMC Corporation*, 528 F.2d 1169 (4th Cir. 1975). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

The Court notes that Plaintiffs are represented by counsel experienced in complex class action litigation, as set forth in their declaration and attached as exhibits to their motion, and all agree that the resolution of this case in this manner is fair and reasonable. Additionally, the Named Plaintiff representing the Class is in favor of approval of the Settlement. Considering the foregoing *Reed* factors, the Court approves this Class Action Settlement.

2. **Sufficiency of Class Notice.**

The class notice fully complied with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and was due and sufficient notice to all persons entitled to notice of the settlement of the Litigation. This Court approved the forms of notice to be sent to the Settlement Class in its Order preliminarily approving the Settlement, and the notice was executed by the parties in the manner so ordered by this Court.

3. **Adequacy of Notice Procedure**.

On January 23, 2019, Defendant launched two dedicated customer service webpages with information related to the preliminarily approved settlement. These webpages contained not only the long-form notice of the settlement, but also allowed Class Members to begin filing claims.

Defendant sent letters dated January 18, 2019 to 3,061 of its authorized dealers and distributors with information pertaining to the preliminarily approved settlement, and asked their dealers and distributors to circulate the notice information to their employees and customers; and

Defendant purchased advertising space in three of the most widely circulated hunting/shooting publications in which to provide notice of the preliminarily approved settlement. Defendant's notice appeared in April 2019 issue for two of the publications and in the April/May 2019 issue for the third. These three publications had a circulation of 3,592,217.

This Court finds the notice distribution and procedure as described above to be adequate.

4. **Notice Success.**

As of May 13, 2019, 1,325 claims had been made using the methods set forth in the long-form notice and on the customer service webpage established by the Defendant. Of these, 935 claims have been approved for repair and 370 repairs have been completed. It is evident, then,

that the notice has successfully reached members of the Class, who have already begun to take advantage of the benefits conferred via the Settlement.

These forms of class notice fully comply with the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and are due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit. After completion of the notice period, Settlement Class Members filed no objections and no Settlement Class Member has elected to opt-out of the Settlement.

**B.      Class Certification**

The Court previously addressed the commonality, typicality and adequacy of class representation in its Order on Plaintiff's unopposed Motion for Preliminary Approval of Settlement. [Dkt. 52]. However, the Court now grants final certification of the class for settlement purposes and reviews its decision for doing so as follows.

This case was originally filed by Plaintiff on behalf of a class consisting of any citizens of the United States who purchased any Browning or Winchester Repeating Arms branding firearm containing the Dura-Touch Coating. The Court finds that certification of the Settlement Class solely for purposes of this Settlement is appropriate in that (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any questions affecting only individual Settlement Class Members; (c) Plaintiffs' claims are typical of the claims of the Settlement Class; (d) Plaintiff will fairly and adequately protect the interests of the Settlement Class; (e) W. Lewis Garrison and James F. McDonough, (collectively referred to herein as "Class Counsel") are adequate Settlement Class counsel; and (f) a class action is the superior method for the fair and efficient adjudication of this controversy.

Therefore, as the pertinent Rule 23 requirements have been met, the previously certified class set forth below is now finally certified, solely for the purposes of this Settlement, pursuant to Federal Rule of Procedure 23(a) and (b)(3):

> All United States persons who have purchased any Browning or Winchester Repeating Arms branded firearm containing the Dura-Touch coating (as defined in paragraph 2.32 of the Stipulation).
>
> The following entities and individuals are excluded from the Class:
>
> A.    Defendant's officers, directors and employees; and
>
> B.    Judicial officers and their immediate family members and associated court staff assigned to this case.

Furthermore, Stephen Bittner is hereby designated as representative of the Settlement Class (the "Class Representatives"), and W. Lewis Garrison and James F. McDonough and their law firm are hereby appointed as Settlement Class Counsel.

**C.**    **Class Compensation**

In accordance with the terms of the Settlement Agreement [Dkt. 48-3], the terms of which are expressly incorporated into this Order, Defendant shall establish and maintain the Dura-Touch Claim Resolution Process as defined therein. To summarize that process, Browning represents that through the duration of the Claim Period, which is unlimited, it will maintain a page on its website with contact information, including a toll-free phone number, by which Class Members may get their Dura-Touch coated firearm serviced by Browning.

Once a Class Member notifies Browning, either through the website or telephone, of a potential deterioration issue, Browning will promptly send the customer a pre-paid shipping label. The Class Member will promptly ship the firearm, and once the packaged firearm arrives at Browning's Service Center, a service technician will inspect the firearm to confirm that the Dura-

Touch shows signs of deterioration and that the firearm qualifies for a repair under the Dura-Touch Claim Resolution Process.

Based on the firearm model, the service technician will then determine whether the firearm qualifies for either of three service methods that will be carried out on the affected firearm. The service method carried out on the qualified firearm will be chosen by Browning in its sole and absolute discretion. The three service methods will be as follows:

<u>Parts Replacement</u>. Browning has worked with its manufacturers to produce non-Dura-Touch replacement parts (i.e., stocks and forearms) for most potentially affected firearms. The replacement parts will be of equal quality but will use a clear-coat protectant rather than the Dura-Touch coating. When Browning's replacement part inventory allows, Browning's service technicians will remove and discard the deteriorating parts and install the replacement stocks and forearms. Due to the short turnaround time of a replacement service, as compared to the lengthier turnaround time of an actual repair of the affected parts (as described directly below), an outright replacement of the affected parts will be the preferred service method.

<u>Parts Repair</u>. In the event that replacement parts are not in Browning's service inventory or are otherwise not available for a particular firearm model, Browning will repair the deteriorating parts. Browning has engaged the services of at least four third-party service vendors that have the capability, know-how, and necessary equipment to properly repair a deteriorating firearm. Following an internal inspection of the firearm, Browning will send the firearm to one of its third-party service vendors. The service vendor will strip the Dura-Touch coating from the affected parts, carry out a sophisticated water transfer printing process to apply a particular camouflage pattern to the parts (i.e., hydro-dipping), and then finish the repair through the application of a clear-coat protectant.

<u>Firearm Replacement</u>. In the event the firearm parts are not able to be replaced or repaired in a reasonable and financially sound manner, in Browning's sole and absolute discretion, Browning will provide the consumer with a new Browning firearm of equal or greater value.

Following the service of a firearm in one of the three methods described above, Browning's service department will carry out a function test. The function test includes a visual inspection of the firearm, a verification that the trigger pull and other firearm mechanics are within specification, and lastly a test fire with live ammunition. Following a successful function test, the firearm will be packaged by Browning and returned to the Class Member at no cost. The total turnaround time (from receipt of the firearm to return of the firearm) will be six (6) months or less for those firearms that take advantage of the Dura-Touch Claim Resolution Process.

For those firearms which Browning deems do not qualify for a repair under the Dura-Touch Claim Resolution Process, the firearm will be packaged by Browning and shipped to a neutral party with expertise to evaluate the firearm (the "Neutral"), and Browning will notify both the Settlement Class Member and Class Counsel of said rejection. This notice will include the name and address of the Class Member, the reason why the firearm was rejected for repair, and the date it was sent to the Neutral for review.

Upon receiving the firearm, the Neutral will inspect the firearm to determine whether the Dura-Touch shows signs of deterioration and whether the firearm qualifies for a repair under the Dura-Touch Claim Resolution Process. The Neutral's decision is final. If the Neutral decides that the firearm shows deterioration of its Dura-Touch coating and qualifies for a repair under the Dura-Touch Claim Resolution Process, then the Neutral will notify Browning, the Class Member and Class Counsel of his or her decision. The Neutral will also ship the firearm back to Browning where it will be treated as a Qualified Repair as set forth in Section 7.2 of the Stipulation.

Browning will have no right to appeal the Neutral's decision. All shipping costs to and from the Neutral, as well as any fees charged by the Neutral, shall be paid by Browning.

If the Neutral decides that the firearm does not show signs of deterioration of its Dura-Touch Coating and does not qualify for a repair under the Dura-Touch Claim Resolution Process, then the Neutral will notify Browning, the Class Member and Class Counsel of his or her decision. The Class Member will have no right to appeal the Neutral's decision. In this case, the Neutral shall return the firearm to Browning. Browning will ship the firearm to the class member for delivery via cash on delivery that will charge the class member the costs of the shipping and the costs of the neutral's review of the firearm.

This action is hereby dismissed with prejudice pursuant to Fed. R. Civ. P. 41. However, with the consent of the Parties, the Court retains jurisdiction solely for the purpose of enforcing the terms of the Settlement and of this Final Judgment and Order.

## CONCLUSION

Pursuant to Federal Rule of Procedure 23(a) and (b)(3), this class is finally certified solely for the purposes of this Settlement as the following:

> All United States persons who have purchased any Browning or Winchester Repeating Arms branded firearm containing the Dura-Touch coating (as defined in paragraph 2.32 of the Stipulation).
>
> The following entities and individuals are excluded from the Class:
>
> A.  Defendant's officers, directors and employees; and
>
> B.  Judicial officers and their immediate family members and associated court staff assigned to this case.

Furthermore, this Court grants final approval of the Settlement Agreement, including but not limited to the release provisions contained therein, and finds that it is in all respects fair, reasonable, and in the best interest of the Settlement Class. Therefore, all members of the

Settlement Class are bound by this Order Finally Approving the Settlement and the Settlement Agreement. Thus, the Plaintiff's Motion [Dkt. 63] is GRANTED.

SO ORDERED this the 13th day of June, 2019.

/s/ **MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**